[Southern Bitulithic Co. v. Hughston.]

# Southern Bitulithic Co. *v.* Hughston.

## *Assumpsit.*

(Decided February 8, 1912. Rehearing denied May 1, 1912.
58 South. 450.)

1. *Contracts; Sub-Contractor; Validity of Original Contract.*—
Where the action is by a sub-contractor against the contractor for
a breach of the contract to do necessary grading at an agreed price
per cubic yard, the legality of the contract between a city and an
original contractor cannot be inquired into.

2. *Same.*—Where the sub-contractor was not a party to the origi-
nal contract with a city, and brings an action for a breach of his
contract with the original contractor, but does not allege the inval-
idity of the original contract, such invalidity cannot be raised by
an objection to the admission in evidence of the original contract.

3. *Same; Breach; Damages.*—Where a sub-contractor resumed his
contract and continued work thereunder after performance had
been stopped by the original contractor, he earned whatever profit
there may have been in it, and could not recover as damages profits
which he would have had from a continuous, uninterrupted per-
formance.

4. *Same; Construction.*—Where the action was by a sub-contractor
for a breach of his contract and the undisputed evidence showed
that the parties treated several contracts of the original contractor
with the city as "a contract" the court may so interpret it, to
relieve the ambiguity.

5. *Damages; Pleading and Proof.*—Where the action was by a
sub-contractor against the original contractor for a breach of the
contract and the complaint alleged damages on account of a delay
of four or five months in the performance, and consequent damages
therefrom, a balance due on the contract price was improperly as-
sessed as damages.

6. *Corporation; Contracts; Person Authorized; Ratification.*—The
authority of a president of a corporation to enter into a contract
with a city is shown by his company engaging in its execution, by
payment to a sub-contractor of sums of money for work done there-
under, and the receipt of payment from the city for the completed
improvement.

7. *Evidence; Contracts; Sub-Contractor; Breach.*—Where the ac-
tion was by a sub-contractor against an original contractor for
breach of a contract for improvement of city streets, the sub-con-
tractor's estimate of the total excavation required by his contract,
and of what remained to be done at the time there was an inter-
ruption of performance by the original contractor, was properly
received in evidence as tending to demonstrate the reasonableness
of the outfit maintained in the anticipation of the resumption of

the work and the necessary loss suffered thereby, rather than the plans and specifications prepared by and on file in the office of the city engineer.

8. *Charge of Court; Province of Court and Jury.*—Where evidence tending to prove a material part of one of defendant's pleas was excluded without objection, evidence received in proof of other averments became immaterial, and in charging the jury, the court properly assumed that the issue raised by such plea has been abandoned.

9. *Appeal and Error; Harmless Error; Instruction.*—Where the court improperly refused a charge on the measure of damages, requested by defendant, injury will be presumed constituting ground for reversal, unless it is clearly rebutted by the record.

10. *Witnesses; Privileged Communication; Attorneys.*—Where an attorney acted for a defendant in negotiating certain transactions connected with the original contract with a city, the court properly required him as a witness to answer that he acted as such attorney, as tending to show that the contract which was signed by defendant's president was its contract, as the same was not a breach of the relationship.

11. *Costs; Apportionment.*—Where all of the causes of action counted on arose out of, and in large part proof of them related to, one and the same transaction, the court properly refused to instruct the jury to designate the counts under which they found, if they found for the plaintiff for the apportionment of the cost, although there were counts in common and special assumpsit.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

Action by W. A. Hughston against the Southern Bitulithic Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The action was begun by attachment, and the first count declared for the breach of a contract between Hughston and the defendant company, wherein the plaintiff contracted with the defendant to do all the grading for the defendant necessary for the execution of its contract with the city of Decatur relative to the improvement of certain streets and to do certain hauling. The breach declared on is that after going to great expense to procure teams, etc., and the employment of laborers, the defendant without fault on the part of the plaintiff suspended said improvements and requir-

[Southern Bitulithic Co. v. Hughston.]

ed plaintiff to delay the performance of said contract for a long time. Count 2 is the same for all practical purposes. Counts 3 and 4 are the common counts for work and labor done. Count 5 sets out the contract, alleges plaintiff's willingness and ability to perform, alleges the delay of four or five months with the exception of a few days, and consequent damages. Count 6 is practically the same.

CALLAHAN & HARRIS, for·appellant. Plaintiff should have been denied recovery on the 5th and 6th counts of his complaint. First, because legal proof was not made of the grading required for the execution of the contract with the city, and second, because the contract with the city was void, and therefore no grading could be done under it.—*Inge v. Board of Public Work,* 135 Ala. 187. The contract with the city was inadmissible because there was no proof that Ingram had any authority to bind defendant by any such contract.— *Jinwright v. Nelson,* 105 Ala. 405; *Thorington v. Gould,* 59 Ala. 465; *Am. S. & L. Assn. v. Smith,* 122 Ala. 505. The fact that Ingram was president did not imply an authority to contract for the corporation.—*Stanley Co. v. Sheffield,* 83 Ala. 262; *Sampson v. Fox,* 109 Ala. 671. Nor could the corporation be affected by his acts and declarations.—*Brush E. L. & P. Co. v. Montgomery,* 114 Ala. 444. Ratification was not shown as no acts or knowledge of all the material facts attending the act was traced to the corporation.—*Brown v. Bamberger,* 110 Ala. 355; *Stanley Co. v. Sheffield, supra.* The contract was further void because it failed to identify any one or all of the contracts therein referred to. The court erred in refusing defendant's charge 4.—3 Sutherlin on Damages, sec. 714. The court erred in its oral charge in eliminating plea 2.—Sec. 5362, Code 1907;

*Gainor v. L. & N.,* 136 Ala. 259. The court erred in giving the affirmative charge as to counts 5 and 6, as there was dispute in the evidence. The court also erred in admitting in evidence the testimony of the plaintiff as to how many cubic yards were to be excavated in order to perform the work.—*Potts v. Coleman,* 86 Ala. 101; *Mooney v. Hough,* 84 Ala. 87; *Howard v. E. T. V. & G.,* 91 Ala. 274; *Pulliam v. Schimpf,* 109 Ala. 179. The court should have required the jury to designate the counts under which they rendered their verdict.— *L. & N. v. Cofer,* 110 Ala. 492. As an attorney Harris was protected under section 4012, Code 1907.

WERT & LYNNE, for appellee. The president had the authority to contract for the company since he was held out as president by the company, and in any event, the contract was ratified both by the city and the corporation.—2 Thomp. on Corp. secs. 1466, 1468, 1485, 1491, 1493. The seal of the corporation was unnecessary.—2 Thomp. sec. 1920. Appellant is bound by the acts of Ingram under the evidence.—*Lafayette R. R. Co. v. Tucker,* 124 Ala. 514; *Montgomery F. Co. v. Hardaway,* 104 Ala. 100; *Wheeler v. McGuire,* 86 Ala. 398; *Coffin Co. v. Stokes,* 78 Ala. 372; 57 L. R. A. 696; 21 Am. Dec. 608. No waiver on part of plaintiff is shown.—Page on Contracts, sec. 1509. 1510. Plaintiff was properly permitted to testify as to the amount of excavation required as tending to show the damages incurred by it in keeping teams, etc., in readiness to resume the performance of the contract when required. —Sutherlin on Damages, 713; *Peck-Hammond v. Heifner,* 33 South. 807. There was nothing in support of plea 2 to require its submission to the jury.—2 Thomp. on Trials, secs. 2243, 2245, 2281, and 2295. The appellee was entitled to the affirmative charge and any error

as to other charges was without injury.—*Bienville W. S. Co. v. City of Mobile,* 125 Ala. 178.

SAYRE, J.—Demurrers to counts 1 and 2 were sustained. On the motion for a new trial the court required plaintiff to remit such damages as might have been recovered under counts 3 and 4, the common counts, as a condition upon which the motion would be overruled, which was accordingly done. We are to consider, therefore, only those questions which arose under counts 5 and 6.

These counts claimed damages as for the breach of a contract between the parties for that plaintiff was put to great expense and caused to lose profits which otherwise he would have realized, by reason of the defendant's wrong in delaying and interrupting plaintiff in the performance of a contract between them. The general purport of the contract dated on September 12, 1907, is sufficiently shown by the quotation we here make: "Whereas the party of the second part (defendant below, appellant here) has entered into a contract with the city of Decatur * * * for the construction of certain improvements, * * * the parties hereto have agreed as follows: First party contracts and agrees to do all grading second may require for the execution of its above-mentioned contract at the consideration of forty-five cents per cubic yard." At the time the parties entered into this contract, defendant had six several contracts with the city of Decatur, all entered into on September 3, 1907, by which defendant had agreed to do the work of improvement on different streets which had been provided for in six different ordinances. All these contracts between the city and defendant provided that: "The contractors * * * hereby agree to protect and save the city

harmless from any and all claims for damages from the obstruction of the street or streets, or from any neglect of the contractors, * * * and to execute bond * * * to indemnify and save harmless, the said city * * * from all suits or actions of every name or description brought against any of them for or on account of any injuries received or sustained by any party or parties, by or from the said contractors, their servants or agents, in the construction of the work, * * * or by or on account of any act of omission of the said parties of the second part, or their agents, in the performance of this agreement." These contracts refer to the several improvement ordinances, and these ordinances in turn refer to full details, drawings, plans, and specifications of the work, provided for in each case, to be prepared by the city engineer and placed on file in his office. Contracts and ordinances were in evidence; but there was no attempt to prove details, drawings, or any plans and specifications. Plaintiff was permitted, however, over defendant's objection, without producing plans and specifications, to testify to the amount of excavation necessitated by the improvements and the amount done at the time when the first serious interruption occurred. On this state of the case, appellant makes a number of points which were reserved in the court below, and which we think may be properly disposed of on considerations to be stated presently. It contends that the contract with the city was void; that there was no proof that Ingram, by whom, as president, the alleged contracts between defendant and the city purported to have been executed on behalf of the defendant, without the use of a corporate seal, was authorized to execute same; that no one, or all, of such contracts were identified as the contract between defendant and the city referred to in the

contract between defendant and the city were erroneously admitted in evidence; that there was no legal proof of the amount of excavation required for the execution of the contract between the parties; and that for one or the other of these reasons, or all of them, the defendant should have had the affirmative charge.

It may be that certain stipulations of the contracts between defendant and the city constituted an abuse of corporate power, in that they imposed unlawful burdens on the taxpayers, and, for that reason, the contracts might have been avoided in equity at the suit of any one affected; or it may be that the mandatory requirements of the charter of the city of Decatur were such as to render the contract void so that defendant would not have been allowed to recover in a suit brought by it against the city.—*Inge v. Mobile Board of Public Works,* 135 Ala. 187, 33 South. 678, 93 Am. St. Rep. 20. We have not been at pains to investigate the provisions of the charter for the reason that plaintiff's contract was collateral to the contract between defendant and the city and referred to that contract for the purpose only of describing the nature and extent of the work to be done; plaintiff took nothing by the obnoxious provision, his contract was, not to perform defendant's contract with the city, but to perform a certain part of it, lawful in itself, for a lawful consideration. Further, it occurs to us that defendant ought not to have been allowed, on an objection to evidence, to lay the consequences of an unpleaded illegality at the door of plaintiff, who was not a party to the alleged illegal contract. Most of the other errors assigned in this connection are answered by the evidence which went to show, without conflict, that the parties interpreted "a contract" which defendant had with the city to mean in the contract between, and to include

as one contract, the six several contracts defendant had with the city. "A contract" with the city was, under the circumstances, ambiguous. But "there is no surer way to find out what the parties meant than to see what they have done."—*Brooklyn Life Ins. Co. v. Dutcher*, 95 U. S. 269, 24 L. Ed. 410. The parties here from beginning to end of its execution construed "a contract" with the city to mean all the contracts defendant had with the city and so the court on the uncontradicted evidence was authorized to construe it. And the fact that defendant engaged in the execution of the contract by paying to plaintiff from time to time as the work progressed sums of money for work done and receiving payment from the city for the completed improvement is evidence enough that its president acted within his authority when signing defendant's name to the contracts with the city. If he had not authority at the time, he subsequently acquired it by ratification which related back to the time of the execution of the contracts. As for the objection that the plans and specifications were not produced instead of plaintiff's estimate of the total amount of excavation required by the contract and of what remained to be done at the time when he suffered the most serious of the interruptions complained of, the thing of importance as affecting the counts upon the breach alleged was to know what then remained to be done as tending to demonstrate the reasonableness of the outfit maintained during the interval in anticipation of a resumption of the work, and so the extent of the recoverable loss suffered by reason of the expense of that maintenance. On this question the production of the plans and specifications would have shed no light.

Plaintiff's testimony was to the effect—and there was none to the contrary—that after he had entered

upon the performance of the work with the understanding and agreement that it was to be completed during the then current year, he was during considerable periods kept from work by the defendant's order, and that during these periods he suffered losses in maintaining his outfit and in profits he would have earned had the work been prosecuted uninterruptedly. To defendant's insistence that plaintiff had waived the breach alleged by resuming work under the contract at the end of the interval, plaintiff replied that there has been an agreement that he should not waive his right to demand compensation for his loss by reason of the delay. The case made by his testimony was that on a certain occasion during the most prolonged intermission defendant had promised to pay him $500 for loss of time and expenses; but, though the question depends upon the testimony of plaintiff alone, it is doubtful whether this promised payment was to cover the time then past, or was to suffice for the future until March 1st thereafter. It seems doubtful also whether the sum promised was intended to be taken as in full satisfaction of plaintiff's claim for damages, or as a credit thereon as upon an unliquidated demand. It is to be noted here, also, that this testimony which was offered and received as relevant to the plea setting up a waiver, later on became immaterial for the reason that, under the court's ruling, an assignment by plaintiff of funds due him from defendant, alleged in the plea, was excluded as evidence relevant to the issues made under counts 5 and 6, and that to this ruling no exception was reserved. Defendant having, on this state of the case, failed to get before the jury any proof whatever of a material part of its plea, what evidence had been received in proof of other averments became immaterial, and the court without error assumed in charging the jury that the issue

raised by the plea had been taken out of the case.—
*Montgomery v. Wyche,* 169 Ala. 181, 53 South. 786;
*Carter v. Chambers,* 79 Ala. 223. A different question
was presented in *Gaynor v. L. & N. R. R. Co.,* 136 Ala.
244, 33 South. 808, where the trial court assumed to
pass upon the weight of the evidence. There remaining
then no issue but that of defendant's breach vel non,
and that being proved by plaintiff's uncontradicted tes-
timony, and the effect of the error in respect to a recov-
ery under the common counts having been definitely
measured by the proof, also uncontradicted, and re-
moved from the case by the ruling on the motion for a
new trial, reversible error cannot be affirmed of the
court's action in giving the general charge for the plain-
tiff with hypothesis.

But the measure of damages was of importance. As
we have already stated, plaintiff claimed profits which
he would have realized from the continuous and unin-
terrupted performance of his contract and for losses
suffered in maintaining his outfit during the interrup-
tion—elements of damage quite different in nature.
The defendant requested the court in writing to charge
the jury as follows: "If the jury believe from the evi-
dence that plaintiff resumed his contract with the de-
fendant in April and continued the work thereunder,
plaintiff is not entitled to recover any damages as prof-
its which he would have derived from the continuous
and uninterrupted performance of said contract." This
charge should have been given, and the liberal estimate
placed by the jury upon the plaintiff's damages renders
it probable that it operated to appellant's detriment. At
least, from this error the presumption of injury arises
which we do not find to be clearly rebutted by the rec-
ord. Whatever may have been the proper rule under
the circumstances for the admeasurement of damages

in the way of actual losses—a question we do not find presented by the record and assignments of error—it seems clear that plaintiff could not recover profits he might have earned. He resumed and completed the performance of the contract, and whatever profit there may have been in it he earned. There was a balance due on the contract price, but on the motion for a new trial the court, assuming that this balance had been included in the amount for which the verdict was rendered, properly ruled that on the evidence and the complaint as framed it could not be recovered, and then by a remittitur any error as to that was eliminated. Under counts 5 and 6 plaintiff could not recover on the contract nor the value of work done under the contract. Admitting for the argument that he might have recovered prospective profits had he elected to treat the contract as breached when its performance was delayed by defendant, when he resumed the work he waived the breach so far as profits were concerned. The contract, having been performed, became the measure of the profits to be earned thereunder.—3 Suth. Dam. § 714.

A. J. Harris, Esq., was required by the court to answer whether, in negotiating certain transactions with the contract in question and plaintiff's execution thereof, he acted as attorney for the defendant. In this there was no breach of privilege. It was competent for plaintiff to prove the fact of the attorney's employment by the defendant as tending to show that the contract signed by Ingram was the contract of the defendant.— *White v. State,* 86 Ala. 69, 5 South. 674; *M. & M. Ry. v. Yeates,* 67 Ala. 164. There was no proof nor any offer to prove any matter knowledge of which the attorney had acquired from his client by virtue of his attorneyship.

The case was not such as to call for the application of the doctrine of *L. & N. R. R. Co. v. Cofer,* 110 Ala. 492, 18 South. 110. In that case counts were joined claiming damages for separate and distinct torts done at different times. The court said: "In respect to costs when there are distinct causes of action laid in different counts, the parties may be protected by having the court to instruct the jury, in the event they find for the plaintiff upon any less than all the causes of action declared. on, to specify in the verdict the counts upon which the finding is based. This done, the court may award to the defendant the costs relating to those causes upon which the plaintiff failed to recover"—citing 1 Chit. Pl. 412. In the case at hand there were counts in common and special assumpsit; but the causes of action counted on all arose out of, and in large part proof of them related to, one and the same transaction. There was therefore no possibility of an exact or even an approximate apportionment of the costs. The charge requiring the jury to designate under which counts they might find for the plaintiff was refused without reversible error.

For the error indicated above our judgment is that the cause must be returned to the lower court for another trial. It is evident that on another trial the issues will be differently presented. We need not, therefore, discuss some questions of minor importance which have been referred to by counsel.

Reversed and remanded. All the Justices concur.