Nash, C. J.
 

 The case involves the question, not yet decided in this Court, whether, where a Statute makes use
 
 *86
 
 of the words “months,” a lunar or a calendar month is meant. The action is for slanderous words. The Statute provides that in all such cases the action must be brought in six months after the words spoken, and not after. The Statute being pleaded, if a lunar month is meant, the action is barred: if a calendar, it is not: and this is the only question before us. Rev. St. Ch. 65 Sec. 3.
 

 'In deciding the question, our attention is naturally drawn to the history of the division of time into years, months and weeks. The latter is of Divine institution, being the time employed by the Creator of all things, in the creation of the world, and marked by him, by a command, to keep holy tlio seventh. The other two divisions are of man’s invention. It was early discovered, that they were necessary: observation pointed out, that the apparent course of the sun around the earth occupied a period of a little more than three hundred and sixty-five days. The changes of the moon, which were observed to occur every twenty-eight days, naturally suggested the division of months. Among the old Romans, their first king, Romulus, divided the year into ten months, giving to four of them thirty days, and to the rest thirty-one. It was soon discovered, that this did not answer; there were not days sufficient for the sun to perform his- circuit, and he inserted as many days as were necessary to bring it up to the year succeeding. Ilis successor abolished this method, and added two new months, to wit: January and February. Thus the year was made to consist of twelve months, numbering three hundred and fifty days, and to make it agree with the solar period, intercalation — that is, inserting days, was resorted to, and they were intrusted to the Pontifex Maximus, whose duty it was, on the first of every month, to proclaim
 
 (calare)
 
 the month, with the festivals occurring in it, and the time of the new moon. From the verb “calare” originates the word “calendar,” which means the division of time into years, months, weeks and
 
 *87
 
 days, and a register of them. Our almanac is an instance of it. In consequence of the mistakes and negligence of the Pontifex Maximus, great confusion ensued in the recurrence of the festivals, which was endeavored to be rectified by Julius Csesar, by introducing two new months, between November and December, so that the year contained fourteen months. His system continued until 1582, when Gregory 13th introduced what is called the new style, and is still in use under the name of the new, or Gregorian Calendar. The calendar of the Romans had a peculiar arrangement: they gave particular names to three days of the month; the first was called the
 
 calends. <
 
 In the four months of March, May, July, and October, the seventh day was called the
 
 nones,
 
 and, in the others, the fifth was called the nones; and in the four former, the fifteenth days were called the
 
 ides,
 
 and in the rest, the thirteenth were thus called. A month is the twelfth part of a year-, so called from the moon, by whose motion it was regulated, being properly the time in w'hich the moon runs.through the Zodiac. A solar montVis the time in which the sun runs through one entire sign of the Ecliptic, the mean quantity of which is thirty days, ten hours, twenty minutes, and five seconds, being one-twelfth of the time composing the whole year, the length of the lunar months being now twenty eight days. The Romans used the latter in their computation of time. Co. Litt. 135 b. Thus we have seen the difference between the solar and the lunar months. It is somewhat remarkable, that the computation of time, under the same government, should be different in the different Courts. In the temporal ■Courts of England, a month is usually considered to mean a lunar month; in the ecclesiastical, solar or calendar. 1st •Black. Rep. 450; -1 M. & S. Ill; 1 Bing. 307; and, in.' general, when a Statute speaks of a month, without adding calendar or other words, nhoAving a- contrary intention, it shall be construed a lunar month of twenty-eight days. G
 
 *88
 
 Term. Rep. 224 ; 8 East 407-; 1 Bing. 807. Where a deed) speaks of a month, it shall be intended a lunar month, unless it can be gathered from the context that it was intended to-be solar ; 1 M. & S. Ill j1 Com,-Dig.'Ann. B. Oro.-Ja. 107,- and so in all other contracts,-(4 Mod.-185; 1 Stra. 448,)■• unless it be proved that the different departments of trade, which the contract concerns, is, that bargains of that nature' are made in reference to solar months, (1 Stra. 652; 1 M..
 
 &
 
 Sr 111,) and so in bills of- exchange and promissory notes, the custom of trade has established that a/month, mentioned-in them,- shall be construed a solar month,- 1 Br. & B. 187 p 2-B1. Com.-112,
 
 in note.
 

 The argument before us was marked with great ability,by both the eminent gentlemen on estch side who conducted it.- On the part' of the plaintiff, it was urged that, from the' context of the act of Limitations, it'1 Was evident that solar or calendar months were intendédj and I confess I was at first struck with' the force of the suggestion; but, upon a careful examination of the act; my first impression was' removed. In the act, in limiting the time within which the different actions shall be brought, they uniformly refer to' the solar year. Thus, actions of account, case, detinue, &c.,are to be brought within three years next after the cause of action accrued, and actions of trespass
 
 vi et armis,
 
 &c., within one year; and we have seen that, when a Statute uses the-term year, that it means a whole year, or the time necessary to complete it, to wit, the three hundred and sixty-five days, and the fractions; and it is said that, as the limitations referred to a solar division of time, to make the act consistent, we must construe the limitation of actions for words spoken, which immediately succeeds that for violence, as referring to solar months. We do not concur in this construction: we are bound to give to words, ,wlien used in a Statute, the 1 meaning attached to them at common law, unless the act shows that they were not so intended, and a strong argument
 
 *89
 
 is derived from tire fact, that, in limiting' the time within ■which actions for slander are to be1 brought, the phraseology is altered to months.- Why was this done ? Another and a- familiar mode of expression might have been used, which would have kept up- the idea running through the preceding-clauses of the same section, as half a year, in which the-term year means a solar. The expression
 
 half a year
 
 would ’ have carried- with it the idea that the Legislature meant half of that time. But they have used an expression well known to the common law, and- it must be presumed that they intended it to be read in that sense.
 

 Ilis second objection was,- that the w'ords “six months” must be read in connexion noth the popular meaning of the phrase, and it was said that, in this State, few of the mass of the people know anything about lunar months; but they, uniformly, in speaking of months, mean the calendar' month. Several English authorities are cited to sustain the position. But it must be borne in mind,-that they all recognize the common law' rule, that a Statute month is a lunar month, and that in them all, it is not controverted, but that there was
 
 a common understanding,
 
 directing the construction Upon this question. The only American case directly in point, is that cited by plaintiff’s counsel, to sustain his position, of ALSTON v. Alstg-N, 2 So. Car. Const. Rep. C04-8. That case'does fully sustain him. We are always gratified when the decisions of our sister States are brought to our notice, upon any legal point before us.. Though not authoritative, they are in general safeguards to a correct decision, as being the opinions of men whose position and learning entitle them to the highest respect. When we are not satisfied with the reasons assigned, we feel that we are not trespassing upon any duty, in not accepting it as decisive. We confess we are not satisfied with that opinion. The reasoning in it, (and so it is in the English cases referred to,) is built upon an assumption we cannot make. We can
 
 *90
 
 not say that there is such a general understanding in this State. By the defendant it is denied. He insists that the common farmers of the country are familiar with the distinction ; that every fanner, who owns cattle, knows that the period of gestation is reckoned in lunar months, counting twenty-eight days to the month, and that every midwife knows the same as to the human family. In our Statute of Descents, the seventh rule limits the descent to posthumous children, to their being born within ten months from the death of their parent. It never has been questioned, we believe, that the ten months mentioned in that, Statute refers to lunar months, as being the time of gestation. If we are asked, “is the intelligent portion of the people of North , Carolina, in general, ignorant of what is meant by a lunar month,” we cannot say so. If referred to our belief on the subject, we say, we do not so believe, and that they do know much more about it than they do -about “the trial by battle,” (referred to in that case.) Popular or general opinion on the question cannot control the common law. In Georgia, a decision has been made, differing from that 'in South Carolina, Dudley’s Rep. 167, and we see that in New York the Legislature has established the solar as the Statute month: This is evidence that-that Legislature found it was necessary to altor the common law, -and that something more than common belief was required. If Mr. BlacKSTON-K' was in an error, he erred in company with some of the highest names laiown to the law. Lord Colds, book 2, ch 11, sec. 302, says, “the month is regularly counted in law 28 days, and not according to the calendar month, unless it be for the account of a lapse in
 
 a quare impedit.”
 
 This we consider the doctrine of the common law, and binding upon the Court, until -it shall please the Legislature to alter it. We claim no such power. We think it right and proper, because, in its workings, wo see it more in alliance with the rules of
 
 *91
 
 nature, and because it is more uniform in its measurement of time than the calendar month.
 

 Judgment affirmed.